# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**PHYLLIS K. CAVERLY,**

        **Plaintiff,**

**v.**                                            **Case No:  6:11-cv-1051-Orl-GJK**

**COMMISSIONER OF SOCIAL
SECURITY,**

        **Defendant.**

_____

## MEMORANDUM OF DECISION

Claimant, Phyllis K. Caverly, appeals to the District Court from a final decision of the Commissioner of Social Security (the "Commissioner") denying her application for benefits (hereafter "Application").  Doc. No. 1.  Claimant raises three issues on appeal.  First, Claimant argues that the ALJ did not articulate good cause for giving Geoffrey Stewart's, M.D., Claimant's treating physician, Residual Functional Capacity (hereafter "RFC") opinion little weight.  Doc. No. 22 at 9-14.  Second, Claimant argues that the ALJ improperly evaluated her non-exertional impairment of pain.  Doc. No. 22 at 15-17.  Third, Claimant argues that the ALJ erred in finding she was not credible.  Doc. No. 22 at 17-19.

The Court finds that Claimant's first argument is dispositive and, as a result, does not address Claimant's other two arguments.  As set forth below, the Court finds that the ALJ did not articulate good cause for giving Dr. Stewart's RFC opinion little weight and, therefore, the ALJ's decision is **REVERSED** and **REMANDED**, pursuant to sentence four of 42 U.S.C. § 405(g).

I.    **MEDICAL AND OPINION EVIDENCE**

A.  **Geoffrey Stewart, M.D. – Claimant's Treating Physician**

On November 29, 2005, Geoffrey Stewart, M.D., conducted his initial consultation with Claimant.  R. 269-71.  Dr. Stewart noted that Claimant suffered a work injury on July 20, 2004, that caused neck pain which worsened to the point that right arm pain also developed.  R. 269. Dr. Stewart noted that Claimant was diagnosed with two cervical disc herniations and was treated with physical therapy, medications, epidural steroid injections and surgery.  R. 269.  Dr. Stewart noted that Claimant stated her pain got better for a few months after surgery, but slowly returned.  R. 269.  Claimant reported neck pain, back pain and muscle spasms.  R. 269.  Dr. Stewart conducted a physical examination that revealed full, painless range of motion in Claimant's hips, knees and ankles, with no joint tenderness.  R. 270.  Dr. Stewart found Claimant's range of motion was somewhat limited in her neck, but normal in her back.  R. 270. Dr. Stewart's assessment was that Claimant suffers from "Status post ACDF C5-C7," neck pain and right arm pain.  R. 270.  Dr. Stewart placed the following restrictions on Claimant:  "Leg with no lifting over 10 pounds, no pushing or pulling."  R. 270.  On this same date, Dr. Stewart performed an anterior cervical fusion and discectomy of Claimant's C4-C5, C5-C6 and C6-C7. R. 272-77.

On December 14, 2005, and January 11, 2006, Claimant appeared for post-surgery follow ups.  R. 303-04.  Dr. Stewart indicated that Claimant was doing well and experienced "excellent resolution of radicular pain."  R. 303-04.  Dr. Stewart instructed Claimant to continue to moderate activity and avoid bending, lifting and twisting.  R. 303-04.  On May 17, 2006, Dr. Stewart indicated that Claimant was experiencing "[p]ersistent posterior axial neck pain postoperatively with right occipital headaches."  R. 300.  Dr. Stewart prescribed Lidoderm

patches for the neck pain and headaches, and indicated that Claimant could "gradually resume normal activity."   R. 300.   On August 16, 2006, Dr. Stewart noted that Claimant was experiencing ongoing neck pain and that she was "[u]nable to work at this time pending FCE, temporary totally disabled."  R. 297.

On October 18, 2006, Dr. Stewart noted that Claimant complained of neck pain and daily headaches.   R. 294.   Dr. Stewart completed an "FCE Review" wherein he indicated that Claimant "is currently functioning at light physical demand territory which does not meet the criteria of her current job, medium physical demand territory."  R. 294.   Dr. Stewart indicated that Claimant had a "[m]aximum carrying limit [of] 23 pounds.   10 pounds shoulder height to overhead, 18 pounds thigh to shoulder, 20 pounds floor to thigh."  R. 294.   Dr. Stewart placed a "[p]ermanent lifting restriction of 20 pounds, 10 pounds overhead" on Claimant.  R. 294.

On November 1, 2006, Dr. Stewart indicated that Claimant had persistent neck and right shoulder pain.   R. 293.   Dr. Stewart gave Claimant a thirteen percent permanent impairment rating and opined that Claimant had reached maximum medical improvement.   R. 293.   Dr. Stewart imposed a twenty pound permanent lifting restriction on Claimant.   R. 293.   On January 10, 2007, Dr. Stewart indicated that Claimant had axial neck pain and reiterated his twenty pound permanent lifting restriction.   R. 292.   On September 5, 2007, and October 7, 2008, Dr. Stewart indicated that Claimant suffers "ongoing neck pain status post revision cervical fusion" and left hip graft site pain.   R. 349-50.   Dr. Stewart prescribed analgesics and indicated that Claimant could perform "[a]ctivities as tolerated."  R. 349-50.

On October 7, 2008, Dr. Stewart completed a medical source statement with regard to Claimant's ability to perform work-related activities.   R. 360-62.   Dr. Stewart opined that Claimant can lift/carry less than ten pounds frequently and occasionally.   R. 360.   Dr. Stewart

opined that Claimant can stand and/or walk less than two hours in an eight-hour workday, but has no limitation with regard to sitting.  R. 360.  Dr. Stewart opined that Claimant's ability to push and/or pull is limited in her upper extremities because of her cervical spine fusion.  R. 361. Dr. Stewart opined that Claimant can occasionally balance, kneel, crouch, crawl and stoop, but can never climb ramps, stairs, ladders, ropes or scaffolds.  R. 361.  Dr. Stewart opined that Claimant can occasionally reach, handle, finger and feel.  R. 361.  Dr. Stewart opined that Claimant should have limited exposure to temperature extremes, humidity, wetness and hazards. R. 362.  Dr. Stewart indicated that it was "unknown" whether Claimant can sustain work activity for an eight-hour workday with normal breaks during a forty-hour workweek.  R. 362.  Dr. Stewart opined that Claimant's allegations of pain or inability to perform tasks due to fatigue or medication side effects are credible.  R. 362.  Finally, Dr. Stewart indicated that Claimant's limitations apply from August 2005, to the present.  R. 362.

### B.  Alex C. Perdomo, M.D. – Consultative Examining Physician

On May 29, 2007, Alex C. Perdomo, M.D., examined Claimant on behalf of the Commissioner.  R. 307-08.  Dr. Perdomo noted that Claimant, in July 2004, had a laminectomy and cervical spine fusion for a herniated cervical disc.  R. 307.  Dr. Perdomo noted that Claimant had a second surgery in November 2005, because her first surgery did not provide any improvement.  R. 307.  Dr. Perdomo indicated that Claimant reported constant pain in her neck and lower back, ranging from moderate to severe.  R. 307.  Dr. Perdomo indicated that Claimant reported the pain was worse at the base of her neck and radiated into her right upper extremity and down to her hand, with associated numbness and tingling.  R. 307.

In his physical examination, Dr. Perdomo indicated that Claimant was not experiencing acute distress, was alert and oriented, did not have any difficulties walking down the hall or

require an assistive device to ambulate.  R. 307.  Dr. Perdomo indicated that Claimant sat comfortably during the examination and was able to get on and off the examination table without any problems.  R. 307.  Dr. Perdomo indicated that Claimant's range of motion in her upper extremities was affected at her shoulder "with abduction limited to 90 degrees with patient complaining of pain radiating into the base of the neck."  R. 308.  Dr. Perdomo indicated that Claimant had full range of motion in her lower extremities, was able to squat and could stand on her toes and heels without problem.  R. 308.  Dr. Perdomo indicated that Claimant's range of motion in her cervical and thoracolumbar spine was decreased.  R. 308.  Dr. Perdomo indicated that Claimant had normal reflexes, coordination, station, grip strength and fine manipulation.  R. 308.

Dr. Perdomo found that Claimant has a "[h]istory of chronic neck pain with moderate musculoskeletal functional limitations on physical examination."  R. 308.  Dr. Perdomo also found that Claimant has a "[h]istory of chronic lower back pain with mild musculoskeletal functional limitations on physical examination."  R. 308.  Dr. Perdomo opined that Claimant "can stand, walk, and sit for six hours in an eight-hour workday with normal breaks.  She can occasionally lift and carry . . . no more than fifteen pounds.  She should also avoid repetitive bending, stooping, or couching, as well as overhead use of her arms due to the chronic neck pain."  R. 308.  Dr. Perdomo also indicated that he did not observe Claimant to have any manipulative limitations.  R. 308.

### C.  Marilyn S. Rodriguez, M.D. – Non-Examining State Consultant

On June 7, 2007, Marilyn S. Rodriguez, M.D., completed a physical RFC assessment.  R. 309-16.  Dr. Rodriguez found that Claimant can lift and carry twenty pounds occasionally and ten pounds frequently.  R. 310.  Dr. Rodriguez found that Claimant can stand, sit and/or walk six

hours in an eight-hour workday. R. 310. Dr. Rodriguez found that Claimant was unlimited in her ability to push and/or pull within the weight limitations previously noted. R. 310. Dr. Rodriguez found that Claimant can occasionally stoop and crouch. R. 311. Dr. Rodriguez found that Claimant was limited in her ability to reach in all directions, but otherwise had no other manipulative, visual, communicative or environmental limitations. R. 312-13.

### D.  Sunita Patel, M.D. – Non-Examining State Consultant

On July 27, 2007, Sunita Patel, M.D. completed a physical RFC assessment. R. 318-24. Dr. Patel found that Claimant can lift and carry fifty pounds occasionally and twenty-five pounds frequently. R. 318. Dr. Patel found that Claimant can stand, sit and/or walk six hours in an eight-hour workday. R. 318. Dr. Patel found that Claimant was unlimited in her ability to push and/or pull within the weight limitations previously noted. R. 318. Dr. Patel found that Claimant can frequently crawl and climb ladders, ropes and scaffolds. R. 319. Dr. Patel found that Claimant was limited in her ability to reach in all directions, but otherwise had no other manipulative, visual, communicative or environmental limitations. R. 320-21. Dr. Patel noted that there were conflicting medical source statements in the file, but that Claimant's "physical exam findings indicate she can perform this RFC." R. 323.

## II.   ADMINISTRATIVE PROCEEDINGS

On March 30, 2007, Claimant filed her Application, alleging a disability onset date of July 20, 2004. R. 119. The Application was denied initially and on reconsideration. R. 76-79. Claimant requested a hearing before an ALJ and the hearing was held on August 3, 2009. Claimant and a vocational expert testified. R. 32-74, 90. On September 17, 2009, the ALJ issued her decision denying the Application and finding Claimant not disabled. R. 22-31.

In her decision, the ALJ found Claimant suffered from the severe impairments of cervical fusion and degenerative changes of her cervical spine.  R. 24.  The ALJ found that Claimant retains the RFC to perform light work with the following restrictions:  can occasionally lift and carry fifteen (15) pounds and should avoid repetitive bending, stooping, crouching and overhead use of her arms.  R. 25.  In reaching her RFC finding, the ALJ stated the weight she gave to the medical opinions.  R. 27-29.

The ALJ gave "great weight" to Dr. Perdomo's opinion because it was "most consistent with the medical evidence of record when considered in its entirety."  R. 27.  The ALJ gave "some weight" to Dr. Rodriguez's physical RFC assessment.  R. 28.  The ALJ gave "little weight" to Dr. Patel's physical RFC assessment because it was "inconsistent with the medical evidence of record when considered in its entirety."  R. 28.

The ALJ gave "little weight" to Dr. Stewart's opinion because it was inconsistent with his medical records.  To support this statement, the ALJ stated:

> On October 18, 2006, Dr. Stewart noted the claimant had a permanent lifting restriction of 20 pounds and 10 pounds overhead. On January 10, 2007, Dr. Stewart noted the claimant had a 20 pound permanent lifting restriction.  On October 7, 2008, Dr. Stewart noted the claimant had full painless range of motion of the shoulders, hips, knees and ankles.  She had no focal tenderness or spasm of the neck and slight limitation of motion in all planes in the back.  There was no focal tenderness or spasm.  X-rays of the cervical spine showed good incorporation of graft with instrumentation intact and fusion appeared to be solid.

R. 29 (internal citations omitted).    Thus, the ALJ found Dr. Stewart's RFC opinion was inconsistent with his medical records because he previously imposed a twenty pound permanent lifting restriction, found Claimant had full painless range of motion in the shoulders, hips, knees and ankles, and had no focal tenderness or spasm in her neck.

III.   **LEGAL STANDARDS**

A.   **THE ALJ'S FIVE-STEP DISABILITY ANALYSIS**

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled. See 20 C.F.R. §§ 404.1520(a), 416.920(a).  In *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001), the Eleventh Circuit explained the five-step sequential evaluation process as follows:

> In order to receive disability benefits, the claimant must prove at step one that he is not undertaking substantial gainful activity. At step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments. At step three, if the claimant proves that his impairment meets one of the listed impairments found in Appendix 1, he will be considered disabled without consideration of age, education, and work experience. If the claimant cannot prove the existence of a listed impairment, he must prove at step four that his impairment prevents him from performing his past relevant work. At the fifth step, the regulations direct the Commissioner to consider the claimant's residual functional capacity, age, education, and past work experience to determine whether the claimant can perform other work besides his past relevant work.

*Id*. (citations omitted). The steps are followed in order.  If it is determined that the claimant is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

B.   **STANDARD OF REVIEW**

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838

(11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards*, 937 F.2d at 584 n.3; *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The District Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen*, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied). The District Court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004).

### C. REMEDIES

Congress has empowered the District Court to reverse the decision of the Commissioner without remanding the cause. 42 U.S.C. § 405(g)(Sentence Four). To remand under sentence four, the District Court must either find that the Commissioner's decision applied the incorrect law, fails to provide the court with sufficient reasoning to determine whether the proper law was applied, or is not supported by substantial evidence. *Keeton v. Dep't of Health & Human Serv.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (reversal and remand appropriate where ALJ failed to apply correct law or the ALJ failed to provide sufficient reasoning to determine where proper legal analysis was conducted) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1146 (11th Cir. 1991); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)); *Jackson v. Chater*, 99 F.3d 1086,

1090-91 (11th Cir. 1996) (remand appropriate where ALJ failed to develop a full and fair record of claimant's RFC); *accord Brenem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for District Court to find claimant disabled).

This Court may reverse the decision of the Commissioner and order an award of disability benefits where the Commissioner has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993); *accord Bowen v. Heckler*, 748 F.2d 629, 631, 636-37 (11th Cir. 1984). A claimant may also be entitled to an immediate award of benefits where the claimant has suffered an injustice. *Walden v. Schweiker*, 672 F.2d 835, 840 (11th Cir. 1982). The District Court may remand a case to the Commissioner for a rehearing under sentences four or six of 42 U.S.C. § 405(g); or under both sentences. *Jackson*, 99 F.3d at 1089-92, 1095, 1098. Where the District Court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow the Commissioner to explain the basis for his decision. *Falcon v. Heckler*, 732 F.2d 827, 829 - 30 (11th Cir. 1984) (remand was appropriate to allow ALJ to explain his basis for determining that claimant's depression did not significantly affect her ability to work).[1]

## IV.  ANALYSIS

Weighing the opinions and findings of treating, examining, and non-examining physicians is an integral part of steps four and five of the ALJ's sequential evaluation process for

---

[1] On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (on remand ALJ required to consider psychiatric report tendered to Appeals Council); *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984) (on remand ALJ required to consider the need for orthopedic evaluation). After a sentence-four remand, the District Court enters a final and appealable judgment immediately, and then loses jurisdiction. *Jackson*, 99 F.3d at 1089, 1095.

determining disability.   The Eleventh Circuit recently clarified the standard the Commissioner is required to utilize when considering medical opinion evidence.  In *Winschel v. Commissioner of Social Security*, 631 F.3d 1176, 1178-79 (11th Cir. 2011), the Eleventh Circuit held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion <u>requiring the ALJ to state with particularity the weight given to it and the reasons therefor</u>.  *Id.* (citing 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2); *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987)).  The Eleventh Circuit stated that "'[i]n the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence.'" *Winschel*, 631 F.3d at 1178-79 (quoting *Cowart v. Schwieker*, 662 F.2d 731, 735 (11th Cir. 1981) (emphasis added)). *See also MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986) (failure to state with particularity the weight given to opinions and the reasons therefor constitutes reversible error); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (failure to clearly articulate reasons for giving less weight to the opinion of treating physician constitutes reversible error).

Absent good cause, the opinions of treating physicians must be accorded substantial or considerable weight.  *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988).

> Good cause exists when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir.2004) (citations omitted); *see also Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir.1991); *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir.1986).

*Johnson v. Barnhart*, 138 F. App'x. 266, 269 (11th Cir. 2005).[2]   Conclusory statements by an ALJ to the effect that an opinion is inconsistent with or not bolstered by the medical record are insufficient to show an ALJ's decision is supported by substantial evidence unless the ALJ articulates factual support for such a conclusion. *See Poplardo v. Astrue*, No. 3:06-cv-1101-J-MCR, 2008 WL 68593 at *11 (M.D. Fla. Jan. 4, 2008) (failure to specifically articulate evidence contrary to treating doctor's opinion requires remand); *see also Paltan v. Comm'r of Soc. Sec.*, No. 6:07-cv-932-Orl-19DAB, 2008 WL 1848342 at *5 (M.D. Fla. April 22, 2008) ("The ALJ's failure to explain how [the treating doctor's] opinion was 'inconsistent with the medical evidence' renders review impossible and remand is required.").

In the case at bar, the ALJ gave little weight to Dr. Stewart's RFC opinion, stating it was inconsistent with his medical records, as reflected in his October 18, 2006, January 10, 2007, and October 7, 2008, treatment notes.  R. 29.  In his October 18, 2006, treatment note, the ALJ pointed out that Dr. Stewart imposed a permanent lifting restriction of twenty pounds and ten pounds overhead.  R. 29.  In his January 10, 2007, treatment note, the ALJ pointed out that Dr. Stewart imposed a twenty pound permanent lifting restriction.  R. 29.  In his October 7, 2008, treatment note, the ALJ pointed out that Dr. Stewart found Claimant had full, painless range of motion in her shoulders, hips, knees and ankles; Claimant did not have any focal tenderness or spasm and only a slight limitation of motion in her back; and x-rays of Claimant's "cervical spine showed good incorporation of graft with instrumentation intact and fusion appeared to be solid." R. 29.

The ALJ does not explain how Dr. Stewart's aforementioned findings are inconsistent with his RFC opinion.  In the treatment notes identified by the ALJ, Dr. Stewart consistently found that Claimant complained of and suffers from neck pain following her surgery for cervical

---

[2] In the Eleventh Circuit, unpublished decisions are not binding but are persuasive authority.

fusion and discectomy.  R. 294, 297, 300.  Dr. Stewart treated Claimant in light of her ongoing neck pain.  R. 294, 297, 300.  Because Dr. Stewart treated Claimant for neck pain it is unclear how Dr. Stewart's findings that Claimant had full, painless range of motion in her shoulders, hips, knees and ankles; had no focal tenderness or spasm; had only a slight limitation of motion in her back; and had x-rays showing good graft incorporation and solid fusion are inconsistent, in any way, with Dr. Stewart's findings.  Without additional explanation from the ALJ, the Court is unable to determine how these findings are inconsistent with Dr. Stewart's RFC opinion.

It is also unclear how Dr. Stewart imposing a twenty pound permanent lifting restriction in his medical records is inconsistent with his RFC opinion that Claimant can lift/carry less than ten pounds frequently and occasionally.  Until he rendered his RFC opinion, Dr. Stewart never imposed a carrying weight restriction and, therefore, Dr. Stewart's twenty pound permanent lifting restriction is not inconsistent with his RFC opinion that Claimant can carry less than ten pounds frequently and occasionally.  In imposing the permanent lifting restriction, Dr. Stewart did not indicate that Claimant can always lift twenty pounds.  Dr. Stewart did not indicate that Claimant can always, frequently or occasionally lift ten pounds.  Dr. Stewart also did not indicate that Claimant can always, frequently or occasionally lift all weights up to twenty pounds. Rather, Dr. Stewart simply imposed a twenty pound permanent lifting restriction, without stating the frequency with which Claimant could lift or carry lesser amounts.  R. 292, 294.  Dr. Stewart did not address the frequency with which Claimant could lift or carry less than twenty pounds until he rendered his RFC opinion.  R. 360-62.[3]  Dr. Stewart's silence in regard to the frequency with which Claimant could lift or carry less than twenty pounds is not inconsistent with his RFC opinion.

---

[3]  The medical source statement defined "occasionally" as being from "very little to one-third of an eight (8) hour day (cumulative not continuous)."  R. 360.

As explained above, the Court cannot glean the inconsistencies in Dr. Stewart's RFC opinion and his medical records.  The ALJ merely cited the purported inconsistencies, but did not explain them.  Because the Court cannot determine how Dr. Stewart's RFC opinion is inconsistent with his medical records, the Court finds that the ALJ did not state good cause for giving Dr. Stewart's RFC opinion little weight.  Absent good cause, the opinions of treating physicians must be accorded substantial or considerable weight.  *Lamb*, 847 F.2d at 703.  Accordingly, the ALJ's decision will be **REVERSED** and **REMANDED**, pursuant to sentence four of 42 U.S.C. § 405(g).

## V.   CONCLUSION

For the reasons stated above, it is **ORDERED** that:

1.   The final decision of the Commissioner is **REVERSED** and **REMANDED**, pursuant to sentence four in 42 U.S.C. § 405(g); and

2.   The Clerk is directed to enter judgment in favor of Claimant and close the case.

**DONE and ORDERED** in Orlando, Florida on August 27, 2012.

GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

The Court Requests that the Clerk
Mail or Deliver Copies of this order to:

Shea A. Fugate
P.O. Box 940989
Maitland, FL 32794

John F. Rudy, III
Suite 3200
400 N Tampa St
Tampa, FL 33602

Mary Ann Sloan, Regional Chief Counsel
Dennis R. Williams, Deputy Regional Chief Counsel
Susan Kelm Story, Branch Chief
Christopher G. Harris, Assistant Regional Counsel
Office of the General Counsel, Region IV
Social Security Administration
61 Forsyth Street, S.W., Suite 20T45
Atlanta, Georgia 30303-8920

The Honorable Philemina M. Jones
Administrative Law Judge
c/o Office of Disability Adjudication and Review
Desoto Building #400
8880 Freedom Crossing
Jacksonville, FL 32256-1224